
FILED
2009 May-29  PM 02:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHN WOODRUFF,                        )
                                      )
        Plaintiff ,                   )
                                      )
vs.                                   )
                                      )  CIVIL ACTION NO. CV-08-HGD-114-S
CITY OF TRUSSVILLE; DON SIVLEY;       )
ERIC ADAMS,                           )
                                      )
        Defendants .                  )

---

## MEMORANDUM OF LAW IN SUPPORT OF ERIC ADAMS'
## MOTION FOR SUMMARY JUDGMENT

---

J. Bentley Owens, III
Philip G. Piggott
H. Thomas Wells, III
STARNES & ATCHISON LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, AL  35259-8512
Phone:      (205) 868-6000
Fax:        (205) 868-6099
Email:      JBO@starneslaw.com
            PGP@starneslaw.com
            HTW@starneslaw.com

ATTORNEYS FOR ERIC ADAMS

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................1

NARRATIVE STATEMENT OF UNDISPUTED FACTS ......................................1

STANDARD OF REVIEW ...................................................9

ARGUMENT ................................................................10

    I.    OFFICER ADAMS IS IMMUNE FROM PLAINTIFF'S CLAIMS OF UNLAWFUL ARREST ..........................................14

        A.    Officer Adams is Entitled to Qualified Immunity ...................15

        B.    Officer Adams is Entitled to State-Agent Immunity ...............20

    II.    OFFICER ADAMS IS IMMUNE FROM PLAINTIFF'S CLAIMS OF EXCESSIVE FORCE ..........................................23

        A.    Officer Adams is Entitled to Qualified Immunity ...................23

        B.    Officer Adams is Entitled to State-Agent Immunity ...............27

    III.    OFFICER ADAMS IS ENTITLED TO SUMMARY JUDGMENT ON THE CLAIMS OF MALICIOUS PROSECUTION..................................28

        A.    Officer Adams is Not the Proper Target of a Malicious Prosecution Claim....................................29

        B.    Plaintiff Did Not Suffer a Fourth Amendment Seizure....................................31

        C.    There is No Evidence of Malice .............................34

CONCLUSION ........................................................35

CERTIFICATE OF SERVICE ...............................................36

{B0968804}

## **Introduction**

This action arises out of the arrest and prosecution of Plaintiff, John Woodruff, by Officer Eric Adams, Chief Don Sivley, and the City of Trussville, Alabama.  This Memorandum of Law solely addresses the claims against Officer Adams and his entitlement to summary judgment regarding the same.  A separate motion and brief on behalf of the City and Chief Sivley are being filed contemporaneously herewith.

Plaintiff's First Amended Complaint (hereinafter "Complaint") asserts the following causes of action against Officer Adams: Count I (§ 1983 Unreasonable Seizure), Count III (§ 1983 Excessive Force), Count IV (State Law Malicious Prosecution), Count V (Federal Law Malicious Prosecution), Count VII (Assault and Battery), Count VIII (False Imprisonment), and Count IX (Negligence).  For the reasons outlined below, Officer Adams is entitled to qualified immunity for all federal claims asserted against him, and is entitled to state-agent immunity for all state law claims asserted against him.  As such, summary judgment is due to be granted in favor of Officer Adams.

## **Narrative Statement of Undisputed Facts**

1.     On the night of April 14, 2006, Don Sivley, the City's Chief of Police, witnessed Plaintiff driving in a manner that he believed to be reckless on Interstate

1

{B0968804}

59 North.[1]  Chief Sivley announced over the police radio that he had a suspect driving recklessly approaching the Chalkville Road exit of I-59 and asked whether any marked units were in the area. (Depo. of Adams, Exh. 1, pp. 16-17).[2]

2.     Officer Adams responded that he was on North Chalkville Road, and Chief Sivley informed him that he and the suspect were coming his way. (*Id.*).

3.     Officer Adams waited in the median of Chalkville Road, and when Plaintiff passed him he pulled in behind Plaintiff and in front of Chief Sivley. (*Id.* at 19-20).

4.     While behind Plaintiff on Chalkville Road, Officer Adams observed Plaintiff make abrupt and improper lane changes, once cutting a vehicle off. (*Id.* at 21; Depo. of Pl., Exh. 2, pp. 135-39).

5.     Officer Adams followed Plaintiff into a left-turn lane and stopped at a traffic light at the intersection of Chalkville Road and Trussville Crossings Parkway. (Depo. of Adams, Exh. 1, pp. 21-22; Depo. of Pl., Exh. 2, p. 139; Depo. of Sivley, Exh. 3, pp. 54-55).

6.     When the light turned green, and Plaintiff began making a left turn onto Trussville Crossings, Officer Adams activated his lights in an attempt to pull

---

[1] Officer Adams adopts and incorporates herein by reference the statement of facts contained in the City and Chief Sivley's Memorandum regarding Plaintiff's driving on the interstate.  Because Officer Adams did not witness those events, however, they are not relevant to this Motion.

[2] The exhibits are numbered as they appear in Defendants' Evidentiary Submission filed contemporaneously herewith.

{B0968804}

Plaintiff over. (Depo. of Adams, Exh. 1, p. 22; Depo. of Pl., Exh. 2, p. 139; Depo. of Sivley, Exh. 3, p. 55).

7.    Plaintiff did not pull over on Trussville Crossings Parkway, however, but instead continued on Trussville Crossings, turned right off of Trussville Crossings, made another right onto another road, and continued in the direction of the movie theatre that was in the shopping center. (Depo. of Adams, Exh. 1, pp. 22-23; Depo. of Pl., Exh. 2, pp. 141-45; Depo. of Sivley, Exh. 3, pp. 55-58).

8.    After Plaintiff continued to refuse to pull over, Officer Adams activated his siren, and a vehicle in front of Plaintiff pulled over to the side of the road and stopped. (Depo. of Adams, Exh. 1, pp. 22-24; Depo. of Pl., Exh. 2, pp. 145-50; Depo. of Sivley, Exh. 3, pp. 57-60).

9.    Plaintiff at this time was aware that Officer Adams was behind him with his lights on, but he still did not pull over and instead pulled around the stopped vehicle and accelerated toward the movie theatre. (*Id.*).

10.    At about this point Deputy Loyed Brasher,[3] a Jefferson County Sheriff's Deputy working off-duty as a security guard at the theatre, heard a police siren and saw Plaintiff's vehicle approaching the theatre at an unsafe speed with Officer Adams behind him. (Aff. of Brasher, Exh. 4, ¶ 4).

---

[3] Deputy Brasher is referred to as "Deputy McGowen" in the deposition transcripts. Subsequent to the events in question, he changed his legal name from McGowen to Brasher.

{B0968804}

11.    It being a Friday night, the theatre was especially crowded and there were numerous children in front of the theatre and in the parking lot. (*Id.* at ¶ 3).

12.    Deputy Brasher was standing on the curb between the theatre and the parking lot, and, fearing for the safety of the children and other people in the crowd, he yelled at them to get on the sidewalk and out of the roadway so that they would not be hit by Plaintiff's vehicle. (*Id.* at ¶ 5).

13.    Deputy Brasher then stepped off of the curb in front of Plaintiff's vehicle and began flashing his flashlight at him and yelling for him to pull over and stop. (*Id.* at ¶¶ 5-6; Depo. of Adams, Exh. 1, pp. 24-27; Depo. of Pl., Exh. 2, pp. 150-55; Depo. of Sivley, Exh. 3, pp. 61-67).

14.    Rather than stop, Plaintiff accelerated toward the Deputy and then veered around him, during which time the Deputy, fearing that he would be run over, jumped out of the way and back up onto the curb in front of the theatre. (*Id.*).

15.    At this time, Officer Adams pulled his cruiser around and in front of Plaintiff's vehicle and blocked his path. (*Id.*; *see also* Depo. of Pl., Exh. 2, pp. 161-63).

16.    Both Officer Adams and Deputy Brasher approached Plaintiff's driver's side door and ordered him out of the vehicle. (Aff. of Brasher, Exh. 4, ¶¶ 7-8; Depo. of Adams, Exh. 1, pp. 27-28; Depo. of Pl., Exh. 2, pp. 165-170; Depo. of Sivley, Exh. 3, pp. 67-75).

4

{B0968804}

17.     Plaintiff began yelling obscenities at the officers. (*Id.*).   Plaintiff testified that he "said something to the effect of what the f[_ _ _] or what the h[_ _ _].   You know, what the f[_ _ _] is going on or what the h[_ _ _] is going on or what's your f[_ _ _]ing problem." (Depo. of Pl., Exh. 2, p. 169).

18.     Officer Adams reached into Plaintiff's vehicle, unfastened his seatbelt, and with the help of Deputy Brasher forcibly removed Plaintiff from his vehicle. (Aff. of Brasher, Exh. 4, ¶¶ 7-8; Depo. of Adams, Exh. 1, pp. 27-28; Depo. of Sivley, Exh. 3, pp. 75-81).

19.     Plaintiff claims that during this action he was struck in the face, but he does not know whether Officer Adams intended to strike him. (Depo. of Pl., Exh. 2, pp. 167-68).

20.     Both Officer Adams and Deputy Brasher testified that Plaintiff continued to yell obscenities and resist arrest such that he had to be forced to the ground before they could handcuff him. (Aff. of Brasher, Exh. 4, ¶¶ 7-8; Depo. of Adams, Exh. 1, pp. 28-29).

21.     Plaintiff claims that during this process his head hit the pavement, but he does not know whether that was intentional or whether it was incidental. (Depo. of Pl., Exh. 2, pp. 170-72).

22.     No other means of force were used against Plaintiff and he was placed in the back of Officer Adams' patrol car. (Depo. of Adams, Exh. 1, p. 32; Depo. of Pl., Exh. 2, pp. 172-77).

23.     Officer Adams charged Plaintiff with failure to yield to an emergency vehicle, failure to obey a lawful order, disorderly conduct, resisting arrest, and driving under the influence. (Depo. of Adams, Exh. 1, pp. 34-35).

24.     Officer Adams believed that Plaintiff was under the influence of some type of drug because he did not smell any alcohol and Plaintiff "had glazed eyes— His behavior and his hostility for no apparent reason, and his actions, going back and forth between yelling and cursing at two uniformed law enforcement officers, and ignoring them while trying to yell something out the window, were not the actions of someone that is in full possession of their faculties." (*Id.* at 30, 31).

25.     Chief Sivley testified that Plaintiff "was not acting normally by any sense of the word," (Depo. of Sivley, Exh. 3, p. 101), and that his screaming, hollering, and "all of his mannerisms indicated that he was under the influence of something." (*Id.* at 99).

26.     Deputy Brasher agreed that Plaintiff appeared to be under the influence of some type of drug. (Aff. of Brasher, Exh. 4, ¶ 9).

{B0968804}

27.     While his vehicle was being inventoried, a plastic bag of pills which were later identified as Ritalin was found in the vehicle. (Depo. of Adams, Exh. 1, pp. 32-33; Depo. of Pl., Exh. 2, pp. 83-91).

28.     Plaintiff was transported to Trussville City Jail and signed a consent form to have his blood drawn. (Depo. of Pl., Exh. 2, pp. 177-83; Consent Form, Exh. 5).

29.     Officer Adams transported Plaintiff to Medical Center East to have his blood drawn, and during this time Plaintiff refused to tell Officer Adams what type of medication he was on because he did not want it used against him in court, and he also refused to answer medical history questions posed by the nursing staff. (*Id.* at 188; Depo. of Adams, Exh. 1, pp. 64-65).

30.     Plaintiff's blood sample was then sent to the Department of Forensic Sciences to be tested for drugs. (Depo. of Adams, Exh. 1, pp. 47-48).

31.     Plaintiff claims as physical injuries from the arrest abrasions to his face, shoulder, and thumb. (Depo. of Pl., Exh. 2, p. 176).

32.     He does not know whether he bled from any of these alleged abrasions, but he did not notice any blood. (*Id.* at 174-75).

33.     Plaintiff did not seek medical treatment for any of these alleged injuries. (*Id.* at 176-77, 227-28).

7

34.    Plaintiff was examined in the jail by the Trussville paramedics, and the pertinent medical record states that Plaintiff had "no obvious sign of any physical injury" and "no sign of abrasions" were found on either his head or chest. (Paramedic Report, Exh. 6).

35.    Plaintiff next appeared before a Magistrate Judge, executed an appearance bond, and was released. (Depo. of Pl., Exh. 2, pp. 205-06, 210).

36.    One of the conditions of release was that Plaintiff was not to leave the State without notifying the court, and Plaintiff admits that he never notified the court that he wished to leave the State. (*Id.* at 210-15; Appearance Bonds, Exh. 7).

37.    Plaintiff contends that he for some reason believed that he was prohibited from leaving the State, but could not testify where this understanding came from, and could not produce any document stating that he was prohibited from leaving the State. (Depo. of Pl., Exh. 2, pp. 210-15).

38.    Plaintiff's trial was delayed for a period of time while waiting for the toxicology results to come back from the Department of Forensic Sciences. (*Id.* at 215-16).

39.    Once the toxicology results did come back and did not show any drugs in Plaintiff's blood sample, Officer Adams recommended to the city prosecutor that the DUI charge be dropped. (Depo. of Adams, Exh. 1, pp. 55-56).

8

{B0968804}

40.     At the municipal trial the DUI charge was voluntarily dismissed by the City. (Transcript, Exh. 8;[4] Depo. of Pl., Exh. 2, pp. 222-23).

41.     Plaintiff was given an opportunity to defend himself, and he was convicted of reckless driving, disorderly conduct, and resisting arrest. (Depo. of Pl., Exh. 2, pp. 220-22).

42.     Plaintiff then appealed his conviction and was acquitted by a jury in Circuit Court. (*Id.* at 223, 237).

43.     Other than recommending that the DUI charge be dropped after receipt of the toxicology results, and appearing at Plaintiff's criminal trials, Officer Adams had no involvement with Plaintiff's prosecution. (Aff. of Burgin Kent, Exh. 9; Depo. of Pl., Exh. 2, pp. 225).

## Standard of Review

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).   Once a party has properly filed a

---

[4] The portion of the municipal trial attached is from a transcription created by Plaintiff from a recording, and which was produced by Plaintiff during discovery. (Depo. of Pl., Exh. 2, pp. 194-95).

{B0968804}

summary judgment motion, the nonmoving party may not rest upon mere allegations in the pleadings, but must set forth specific facts illustrating genuine issues for trial. *See Fed. R. Civ. P.* 56(c); *Celotex*, 477 U.S. at 322-24.  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

With respect to qualified immunity, the Court's "analysis on qualified immunity review concerns only what the police officers perceived to determine if they acted reasonably in this situation." *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003).  A plaintiff's inability to recall a fact is insufficient to create a genuine issue; "such an inability to recall cannot controvert the officer's undisputed characterization of the events." *Woods v. Paradis*, 380 F. Supp. 2d 1316, 1328 (S.D. Fla. 2005); *see also Ace Rent-A-Car, Inc. v. Empire Fire & Marine Ins. Co.*, 580 F. Supp. 2d 678, 689 n.5  (N.D. Ill. 2008) ("His inability to recall is not a denial, and is not sufficient to raise a genuine issue of material fact for purposes of this motion.").

## Argument

In all but the most exceptional cases, police officers are entitled to qualified immunity from actions brought against them arising out of the performance of their official duties.  The importance of limited *individual* liability for public officials,

10

{B0968804}

such as police officers, has been emphasized by the Supreme Court and the Eleventh Circuit.  "[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Holding public officials *individually liable* for the discharge of their official duties also contravenes the public interest through "the deterrence of able citizens from acceptance of public office." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1993).  This is why qualified immunity is the rule rather than the exception. *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (*en banc*) ("That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." (emphasis in original)).

"The qualified immunity doctrine means that government agents are not always required to err on the side of caution." *Id.*  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Id.*  "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Id.*

The importance of considering qualified immunity as a threshold matter is unquestionable. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) ("we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."). Because a ruling on qualified immunity "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive," it is a question of law to be decided by this Court. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

In order to evaluate whether the defense of qualified immunity is available to preclude § 1983 liability, a court must first determine whether the government official was acting within the line and scope of his discretionary authority when the allegedly wrongful conduct occurred. *See Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir. 1983). This low initial threshold is met if in performing the general act complained of, ignoring whether the act was done within constitutional limits, "the official [was] engaged in a legitimate job-related function." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "[I]n assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities." *Id.* It cannot be seriously disputed that the general conduct at issue, arresting suspects

12

and enforcing the criminal laws, is a discretionary function that is "within [Officer Adams'] legitimate job description." *Id.*; *see also Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (holding that "there can be no doubt" that a police officer who makes an arrest acts within his discretionary authority); *Adams v. St. Lucie County Sheriff's Department*, 962 F.2d 1563, 1568 (11th Cir. 1992) ("It is axiomatic that a law enforcement officer has the discretionary authority to pursue and apprehend a fleeing suspected offender.").

Because Officer Adams was performing a discretionary function, the burden is on Plaintiff to establish that Officer Adams is not entitled to qualified immunity. *Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988).  The Supreme Court has outlined the appropriate analysis of qualified immunity at the summary judgment stage:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry. . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.

{B0968804}

*Saucier v. Katz,* 533 U.S. 194, 201 (2001) (internal citation omitted).[5]

In making this inquiry, the Supreme Court has made clear that the relevant facts are those known *to the officer* at the time of the challenged conduct. *Id.* at 207.  Furthermore, the Eleventh Circuit has admonished that in analyzing the facts known to the officer at the time,

> we are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts.  We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal.

*Crosby v. Monroe County,* 394 F.3d 1328, 1333-34 (11th Cir. 2004) (citations omitted).  "We do not use hindsight to judge the acts of police officers; we look at what they knew (or reasonably should have known) at the time of the act." *Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (11th Cir. 2002).

I.   **OFFICER ADAMS IS IMMUNE FROM PLAINTIFF'S CLAIMS OF UNLAWFUL ARREST.**

Plaintiff has asserted claims under both federal and state law premised on the allegation that Plaintiff's arrest was unlawful.  However, because Plaintiff's

---

[5] The Supreme Court has recently held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and that district judges are permitted to "exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

{B0968804}

arrest was supported by at least arguable probable cause, Officer Adams is entitled to immunity from such claims.

### A.     Officer Adams is Entitled to Qualified Immunity.

With respect to claims premised on an allegedly unlawful arrest, "[a]rguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry." *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999).  "Significantly, all that is required for qualified immunity to be applicable to an arrest is *arguable* probable cause . . ., that is, where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiffs." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (emphasis in original, and internal marks and citations omitted).  "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Id.* at 1302-03.

Furthermore, "[p]olice officers are not expected to be lawyers or prosecutors" in ascertaining whether probable cause exists. *Id.* at 1303 n.8.  The dispositive issue should be "whether [the officer] violated clearly established law in making the arrests based on the objective factors that gave rise to his probable-

15

cause determination and not whether the arrestees' actions actually constituted a crime." *Id.*

Finally, in determining whether arguable probable cause to arrest existed in this case, it is irrelevant what charges were actually brought against Plaintiff or what charges Officer Adams subjectively believed were supported by probable cause at the time of the arrest.  Rather, Officer Adams is entitled to qualified immunity if at the time of the arrest, based on the facts known to him, there was arguable probable cause to arrest Plaintiff for *any* offense. *Durruthy v. Pastor*, 351 F.3d 1080, 1090 n.6 (11th Cir. 2003) (an officer effecting an arrest "is shielded by qualified immunity so long as she had probable cause to arrest [plaintiff] for *any* offense." (emphasis in original)); *Burdeshaw v. Snell*, 365 F. Supp. 2d 1194, 1201 (M.D. Ala. 2005) ("as long as the facts known to [the officer] gave [him] probable cause to arrest [plaintiff] for some crime, whether [the officer] had probable cause to arrest him for the particular crime stated at the time of arrest is of no legal consequence in this case."); *see also Devenpeck v. Alford*, 543 U.S. 146 (2004) (rejecting the notion that an arrest is unlawful under Fourth Amendment if offense for which there is probable cause to arrest is not 'closely related' to offense identified by arresting officer); *Lee,* 284 F.3d at 1195-96 (for purposes of arguable probable cause inquiry, it is irrelevant whether officer cited correct offense because neither officer's subjective reliance on an offense for which no probable cause

16

{B0968804}

exists nor his verbal announcement of the wrong offense vitiates the arrest); *Hill v. State*, 665 So. 2d 1024, 1026 (Ala. Crim. App. 1995) ("If [the officer's] observation of [plaintiff's] conduct was sufficient to supply her probable cause to arrest [plaintiff[ for any chargeable offense, then the probable cause element is satisfied.").

As testified by Officer Adams, at the time he arrested Plaintiff, Officer Adams "had specific actions in mind," but "[a]s to which charge that was applicable, that could be brought to bear regarding those actions," he had not made a decision. (Depo. of Adams, Exh. 1, p. 188).  It is undisputed that the facts known to Officer Adams at the time he arrested Plaintiff were as follow: (1) he had been informed by the Chief of Police that Plaintiff had been driving recklessly; (2) he had witnessed Plaintiff operate his vehicle in violation of traffic laws, including making improper lane changes; (3) he turned on his lights as he and Plaintiff were turning onto Trussville Crossings Parkway, but Plaintiff failed to pull over; (4) instead of pulling over, Plaintiff made two right turns and continued toward the theatre; (5) Officer Adams activated his siren along with his lights, and a vehicle in front of Plaintiff pulled over, but Plaintiff refused to pull over and instead pulled around the stopped vehicle and accelerated toward the front of the theatre which was crowded with children; (6) once Plaintiff pulled around to the front of the theatre, a Jefferson County Sheriff's deputy stepped in front of Plaintiff's vehicle

17

waving a flashlight and signaling for Plaintiff to pull over; (7) Plaintiff accelerated at the deputy, causing him to jump out of the way of Plaintiff's car, and Plaintiff only stopped once Officer Adams executed a maneuver by pulling in front of Plaintiff and blocking his path; and (8) during their interaction, Plaintiff stated something to the effect of "what the f[_ _ _] is going on or what the h[_ _ _] is going on or what's your f[_ _ _]ing problem;" (9) three trained law enforcement officers believed that Plaintiff appeared to be under the influence of some type of drug. (*See* pages 1-7, *supra*).

Based on these facts, Officer Adams unquestionably had at least arguable probable cause to arrest Plaintiff.  First, Plaintiff's failure to pull over immediately constituted a violation of Trussville municipal ordinance No. 95-040 MC, 11-14-95 making it "unlawful for any person to refuse or fail to comply or to disobey any lawful order, signal or direction of a police officer of the city." (Ordinance No. 95-040 MC, 11-14-95, Exh. 10).[6]  In Alabama, "[p]olice officers may arrest any person without a warrant, on any day and at any time, for the violation of a City ordinance committed in their presence." *Hood v. City of Bessemer*, 404 So. 2d 710, 715 (Ala. Crim. App. 1980) *aff'd* 404 So. 2d 717 (Ala. 1981); *see also Ala. Code* § 15-10-3 (1975); *Lee,* 284 F.3d at 1196 (holding that police officer was entitled to qualified immunity for unlawful arrest where he had probable cause to believe

---

[6] *Also available at*: http://www.municode.com/resources/gateway.asp?pid=14457&sid=1.

plaintiff violated County ordinance against honking car horns).  "Where an officer lawfully arrests an individual for the commission of a crime, no matter how minor the offense, the officer is entitled under controlling Supreme Court precedent to effectuate a full custodial arrest." *Lee,* 284 F.3d at 1196 (granting qualified immunity and rejecting plaintiff's argument that Florida law prohibited custodial arrests for traffic offenses); *see also Atwater v. City of Lago Vista*, 532 U.S. 318 (2001).

Furthermore, Plaintiff's refusal to pull over, and instead continuing in his vehicle toward a theatre crowded with children, gave Officer Adams at least arguable probable cause to arrest Plaintiff for reckless endangerment. *Ala. Code* § 13A-6-24(a) ("A person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.").  Moreover, Plaintiff's driving his vehicle at the Jefferson County Sheriff's deputy to the point that he had to jump out of the way for fear of being hit would support arguable probable cause for reckless endangerment.  This same conduct would support arguable probable cause for attempted assault in the first degree. *Ala. Code* § 13A-6-20; *Kelley v. State*, 362 So. 2d 1292, 1294 (Ala. Crim. App. 1978) ("An automobile intentionally put in motion and violently and intentionally driven against a police officer constitutes an assault with a deadly instrument in violation of" the predecessor statute to § 13A-6-20).

19

Finally, Plaintiff's exclamations of profanity in front of a crowded movie theatre at least gave Officer Adams arguable probable cause to arrest Plaintiff for disorderly conduct. *Ala. Code* § 13A-11-7(2) and (3); *Powell v. State*, 796 So. 2d 404, 425 (Ala. Crim. App. 1999) ("Because Powell cursed loudly and used abusive language in the presence of several police officers at the police station, the officers had sufficient probable cause to arrest Powell for the misdemeanor offense of disorderly conduct. Thus, we conclude his arrest was lawful.").

Because the facts as understood by Officer Adams at the time at the very least supported arguable probable cause to arrest Plaintiff for at least one offense, Officer Adams is entitled to qualified immunity as to Count I (§ 1983 Unreasonable Seizure).

### B.     Officer Adams is Entitled to State-Agent Immunity.

Similar to immunity under federal law, Officer Adams is entitled to state-agent, or "discretionary function," immunity from the state law claims of false arrest. *Ala. Code* § 6-5-338(c). "Under discretionary-function-immunity analysis, a court first determines whether the governmental defendant was performing a discretionary function when the alleged wrong occurred; if so, 'the burden shifts to the plaintiff to demonstrate that the defendant[] acted in bad faith, with malice or willfulness in order to deny [him] immunity.'" *Scarbrough*, 245 F.3d at 1303 n.9 (applying Alabama law). If the officer is performing a discretionary function, he is

statutorily immune from all claims of negligence. *See City of Birmingham v. Sutherland*, 834 So. 2d 755, 762 (Ala. 2002) ("Allegations of negligence are not sufficient to remove the immunity the City is provided for [an officer's] performance of a discretionary function.").

In the instant case, the arrest of Plaintiff is unquestionably the performance of a discretionary function triggering the immunity provisions of *Ala. Code* § 6-5-338(c). *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) (explicitly including "law-enforcement officers' arresting or attempting to arrest persons" within the activities entitling officials to state-agent immunity); *see also Swan v. City of Hueytown*, 920 So. 2d 1075, 1079 (Ala. 2005) ("the *Cranman* standard answers in the affirmative the question whether arresting a person is an exercise of judgment-- a 'discretionary function'--and therefore clothes the officer in State-agent immunity."); *Ex parte Duvall*, 782 So.2d 244, 248 (Ala. 2000) (act of arresting plaintiff is clearly a discretionary function because "[t]here is no hard and fast rule concerning when there is probable cause to arrest a person . . . for refusing to comply with a lawful order or direction of a police officer."); *Ex parte City of Montgomery*, 758 So. 2d 565, 570 (Ala. 1999) ("There is no hard and fast rule concerning when there is and when there is not probable cause to arrest a driver suspected to be under the influence of alcohol and/or drugs. . . . As a result, [the officer] and his employer, the City of Montgomery, are immune under § 6-5-338,

{B0968804}

unless his actions were conducted with willful or malicious intent or in bad faith."). As such, Officer Adams is entitled to state-agent immunity from all claims of negligence arising out of Plaintiff's arrest, including Count VIII (False Imprisonment) and Count IX (Negligence).[7]

There is an exception to state-agent immunity for "conduct [which] is so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith." *Couch v. City of Sheffield*, 708 So. 2d 144, 153 (Ala. 1998).  In the context of a claim of unlawful arrest, "the standard of 'arguable probable cause'" governs whether Plaintiff's claim can survive. *Borders v. City of Huntsville*, 875 So. 2d 1168, 1180 (Ala. 2003).  As stated above, Officer Adams had at least arguable probable cause to believe Plaintiff had committed at least one of several offenses which would support his arrest. *See Wood v. Kesler*, 323 F.3d 872, 884 (11th Cir. 2003) (applying Alabama discretionary-function immunity and holding, "The existence of probable cause, and in particular the facts showing that probable cause, contradict any suggestion of malicious intent or bad faith.").

Furthermore, the Alabama Supreme Court has made clear that the "malice" required to defeat state-agent immunity is "actual malice," as opposed to "legal malice" which can be inferred from a lack of probable cause. *Ex parte Tuscaloosa*

---

[7] Because Officer Adams is entitled to summary judgment on these state law claims, the City is also entitled to summary judgment on the same grounds. *Ala. Code* § 11-47-190 (Alabama municipality can only be held liable for the negligence of its agents).

*County*, 796 So. 2d 1100, 1106-07 (Ala. 2000).   In order to defeat state-agent immunity, Plaintiff is required to present substantial evidence that Officer Adams "had a personal ill will toward [Plaintiff] and that he maliciously or in bad faith caused [Plaintiff] to be arrested solely for the purpose of harassing him." *Id.* at 1107.  There is no evidence whatsoever that Officer Adams acted with any type of malicious intent in arresting Plaintiff.  As such, Officer Adams' is entitled to summary judgment on Plaintiffs' state law claims premised on an allegedly unlawful arrest or imprisonment.

**II.   OFFICER ADAMS IS IMMUNE FROM PLAINTIFF'S CLAIMS OF EXCESSIVE FORCE.**

Plaintiff has asserted claims under both federal and state law premised on allegations of excessive force utilized during the course of his arrest.  However, Plaintiff cannot recover on such a claim because whatever force was used during the course of his arrest was de minimis.

**A.   Officer Adams is Entitled to Qualified Immunity.**

Importantly, the United States Supreme Court has opined that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).  The Eleventh Circuit has further noted that "[f]rom the vantage of an officer whose life is jeopardized, a

{B0968804}

potential arrestee who is neither physically subdued nor compliantly yielding remains capable of generating surprise, aggression, and death." *Menuel v. City of Atlanta*, 25 F.3d 990, 995 (11th Cir. 1994).

With respect to whether an officer is entitled to qualified immunity in an excessive force claim, "[t]he Supreme Court 'has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Crosby v. Monroe County*, 394 F.3d 1328, 1334 (11th Cir. 2004) (quoting *Graham*, 490 U.S. at 397). Furthermore, the Eleventh Circuit "recognize[s] that the typical arrest involves some force and injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). The Eleventh Circuit "has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). Based on these axioms, the Eleventh Circuit "has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

In the present case, Plaintiff alleges that he was hit in the face while being forcibly pulled from his vehicle, and that he was put on the ground and placed into handcuffs. (Depo. of Pl., Exh. 2, pp. 167-68, 170-72). Plaintiff alleges that he

suffered abrasions, but does not know if he bled. (*Id.* at 174-76). He also admits that he sought no medical treatment for any alleged injuries resulting from the arrest. (*Id.* at 176-77, 227-28). The only medical treatment he did receive was from paramedics who treated him in the jail shortly after his arrest, and the records show that Plaintiff had "no obvious sign of any physical injury" and "no sign of abrasions" were found on either his head or chest. (Paramedic Report, Exh. 6). The type of force alleged by Plaintiff, even viewed in the most favorable light, falls squarely within the types of force which the Eleventh Circuit has on multiple occasions held to be de minimis and insufficient to support an excessive force claim.

In *Nolin v. Isbell*, *supra*, a seventeen-year-old boy and his friend were wrestling during the May Day festival in Springville, Alabama. Two officers witnessed the struggle, and, believing there to be a fight, arrested the boy. The boy alleged that one of the officers "grabbed him from behind by the shoulder and wrist, kneed him in the back and pushed his head into the side of the van, searched his groin in an uncomfortable manner, and handcuffed him." *Nolin*, 207 F.3d at 1255. The boy claimed that he suffered "bruising to his forehead, chest, and wrists," but admitted that he did not seek medical attention subsequent to the arrest. *Id.* The Eleventh Circuit held that the officer was entitled to qualified immunity, finding that "[t]his factual recitation . . . falls well within the ambit of

25

the de minimis force principle . . . . In fact, the facts sound little different than the minimal amount of force and injury involved in a typical arrest." *Id.* at 1258 n.4. The Court held "that a minimal amount of force and injury, as present on the facts of this case, will not defeat an officer's qualified immunity in an excessive force case." *Id.* at 1258.

The Eleventh Circuit has consistently held that force such as that alleged in the present case is de minimis and cannot support a Fourth Amendment excessive force claim. *See, e.g., Crosby v. Monroe County,* 394 F.3d 1328, 1330, 1334-35 (11th Cir. 2004) (where plaintiff voluntarily laid on the ground at the request of officers, and officers got on top of plaintiff, put their knees in his back while handcuffing him, and when plaintiff raised his head to ask why he was being arrested an officer "put his foot on [plaintiff's] face and pushed his head back down."); *Durruthy*, 351 F.3d at 1085, 1094 (where officers grabbed plaintiff from behind, forced him to the ground while struggling to pin his arms behind him to handcuff him, and an officer kneed plaintiff in the back, during which plaintiff did not resist and stated, "Sir, my arm . . . please sir . . . I am going peacefully, sir."); *Jones v. City of Dothan, Alabama*, 121 F.3d 1456, 1460 (11th Cir. 1997) (finding de minimis force where plaintiff, who told officers he had recently suffered a stroke, was "slammed" against a wall, had his legs kicked apart, and was forced to lift his arms above his head while being searched, and plaintiff suffered pain in his

arms and knee and sought medical treatment for his knee three days after the incident); *Bryan v. Spillman*, 217 Fed. Appx. 882, 886 (11th Cir. 2007) (finding the "temporary pain" and "no treatment" and "no lasting injury" of a rough search of the genitals, and pushing a defendant against a car and holding his head down, to be de minimis); *see also Sosa v. Hames*, 581 F. Supp. 2d 1254, 1277 (S.D. Fla. 2008) ("Although Sosa may have been injured during the arrest, the act of pulling Sosa from the car and throwing him to the ground before handcuffing him is less severe than other behavior the Eleventh Circuit has determined to be reasonable and *de minimis*.").

Accordingly, the de minimis force alleged cannot defeat Officer Adams' defense of qualified immunity and he is entitled to summary judgment on Count III (§ 1983 Excessive Force).

### B.   Officer Adams is Entitled to State-Agent Immunity.

Furthermore, as explained above in Part I.B., Officer Adams was performing a discretionary function and is therefore immune from Plaintiff's state law claims of assault and battery unless Officer Adams' conduct was "so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith." *Couch*, 708 So. 2d at 153.  There is no evidence in the record that Officer Adams harbored any malicious intent or other ill will toward Plaintiff. *See Sheth v. Webster*, 145 F.3d 1231, 1240 (11th Cir. 1998) ("The same facts which establish [an officer's]

entitlement to qualified immunity establish that his acts were not willful, malicious or in bad faith [thereby entitling him to state-agent immunity].   The Alabama Supreme Court has equated qualified immunity with discretionary function immunity.").   Plaintiff even admitted that he did not know what Officer Adams' intent was during the events in question. (Depo. of Pl., Exh. 2, pp. 176-77, 227-28). Furthermore, the fact that Plaintiff did not suffer any injuries, or at most de minimis injuries, belies any claim that Officer Adams used force in a malicious manner.   The Eleventh Circuit has previously held that de minimis force and/or minor injuries weighs against a finding of malicious intent. *See Johnson v. Moody*, 206 Fed. Appx. 880, 884 (11th Cir. 2006) (per curiam) ("the extent of the injury shows that the force was not used maliciously and sadistically").   As such, Officer Adams is entitled to summary judgment for Count VII (Assault and Battery).

**III.   OFFICER ADAMS IS ENTITLED TO SUMMARY JUDGMENT ON THE CLAIMS OF MALICIOUS PROSECUTION.**

Plaintiff's remaining claims involve allegations of malicious prosecution under federal and state law.   These claims are due to be dismissed for several independently sufficient reasons.   First, Officer Adams, as the arresting officer, is not the proper target of a malicious prosecution claim.   Second, Plaintiff cannot establish a Fourth Amendment seizure in connection with his prosecution.   Finally, there is no evidence that Officer Adams was motivated by any malicious intent.

{B0968804}

**A.      Officer Adams is Not the Proper Target of a Malicious Prosecution Claim.**

In her concurring opinion in *Albright v. Oliver*, 510 U.S. 266 (1994), Justice Ginsburg characterized a malicious prosecution claim brought against the arresting officer as "anomalous." *Id.* at 279 n.5 (Ginsburg, J., concurring).  She explained that "[t]he principal player in carrying out a prosecution—in the 'formal commencement of a criminal proceeding,'—is not police officer but prosecutor. Prosecutors, however, have absolute immunity for their conduct." *Id.*

In *Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir. 1994), the Eleventh Circuit recognized that, generally, arresting officers "are not the proper targets of such a claim [for malicious prosecution]."  The Court reversed the trial court and held that the arresting officers were entitled to summary judgment on a federal malicious prosecution claim.  The Court explained:

> In the within case, if the entire sequence of events, including those relevant to the arrest, is examined, it becomes clear that none of the defendants were responsible for the decision to prosecute.  They did fully apprise the State Attorney of all relevant information known to them, including that which weighed for and against [plaintiff's] guilt. In so doing, the defendants concluded what they started to do in this case, i.e. they performed their duties as police officers . . . . But they did not make the decision as to whether or not to prosecute [plaintiff]; nor did they act in such a way as to improperly influence the decision of the State Attorney in that regard.

*Id.* at 1160-61.

{B0968804}

The Eleventh Circuit has explained that this principle is based in part on the fact that the arresting officer is not the legal cause of the prosecution. *Whiting v. Traylor*, 85 F.3d 581, 586 n.10 (11th Cir. 1996) ("Recovery of damages is limited to those injuries proved to be *caused by the defendants*. This lawsuit is against arresting officers. In many cases, arresting officers will not be responsible for the continuation of the prosecution because the prosecutor (or some other factor) will break the causal link between defendants' conduct and plaintiff's injury." (emphasis in original)); *Barts v. Joyner*, 865 F.2d 1187, 1197 (11th Cir. 1989) ("The intervening acts of the prosecutor, grand jury, judge and jury . . . each break the chain of causation unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant policeman.").[8]

In this case, after Plaintiff was arrested and Officer Adams filed the charges, there was a preliminary hearing before a Magistrate which set bond for Plaintiff pending trial. (Depo. of Pl., Exh. 2, pp. 205-06, 210). Other than testifying at Plaintiff's trial, there is no evidence that Officer Adams had anything to do with

---

[8] Other circuits, cited with approval by the Eleventh Circuit in *Whiting*, have come to the same conclusion that arresting officers are not the appropriate target of a malicious prosecution claim. *See Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996) (affirming dismissal of malicious prosecution claim against arresting officers, and holding, "This is because the State's Attorney, not the police, prosecutes a criminal action. It is conceivable that a wrongful arrest could be the first step towards a malicious prosecution. However, the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor."); *Talyor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996) (affirming summary judgment in favor of arresting sheriff on malicious prosecution claim because "preliminary [probable cause] hearing broke the 'chain of causation.'").

the prosecution other than recommending to the prosecutor that the DUI charge be dropped once the blood analysis came back negative from the Department of Forensics. (Aff. of Burgin Kent, Exh. 9; Depo. of Pl., Exh. 2, pp. 225).  As such, Officer Adams is not the proper target of a malicious prosecution claim and he is therefore entitled to summary judgment. *See, e.g., Woods v. Paradis*, 380 F. Supp. 2d 1316, 1330 (S.D. Fla. 2005) (granting summary judgment and holding, "Defendant Paradis was not the legal cause of the original proceedings against F. Woods.  Defendant Paradis simply fulfilled his duties as a police officer, and turned in his copy of the Notice of Appear, the probable cause affidavit, and the incident report to the Miramar Police Department.  It is undisputed that Defendant Paradis never spoke to anyone or heard anything more about F. Woods' case until he was subpoenaed to testify at F. Woods' criminal trial. . . . Because Defendant Paradis had nothing to do with the decision to prosecute F. Woods, he is not the proper target for a malicious prosecution claim.").

> **B.    Plaintiff Did Not Suffer a Fourth Amendment Seizure.**

"To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, **and** (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004)

31

(emphasis added).  Plaintiff cannot establish that he suffered a Fourth Amendment seizure in connection with his prosecution.

"In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted" *Id.* at 1335.  "Thus, the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was 'not one that arose from malicious prosecution as opposed to false arrest.'" *Id.*; *see also Love v. Oliver*, 450 F. Supp. 2d 1336, 1342 (N.D. Ga. 2006) (holding that the legal process did not begin until after plaintiff's appearance before a Magistrate Judge, and her initial arrest and detention prior to that appearance were not a seizure for purposes of her malicious prosecution claim).  As such, Plaintiff's initial arrest and detention prior to appearing before the magistrate cannot satisfy the "seizure" requirement in this case.

Furthermore, the Eleventh Circuit has made clear that typically "the conditions of [a plaintiff's] pretrial release [do not] constitute a 'continuing seizure'" violative of the Fourth Amendment. *Kingsland*, 382 F.3d at 1236.  The plaintiff in *Kingsland* argued that she was "seized" because "she was required to (1) pay a $1,000 bond; (2) appear at her arraignment; and (3) make two trips from New Jersey to Florida to defend herself in court, pursuant to the authority of the state." *Id.* at 1335.  In finding that such was insufficient to support a claim of malicious prosecution, the Eleventh Circuit held:

{B0968804}

> While we sympathize with Kingsland's anxiety and inconvenience, assuming the facts in her complaint to be true, we cannot go so far as to say that the conditions of her pretrial release—which did not constitute a significant deprivation of liberty—constituted a seizure violative of the Fourth Amendment.

*Id.* at 1336; *see also Love*, 450 F. Supp. 2d at 1343 (despite the fact that plaintiff was suspended from her job as a result of the prosecution, the Court held, "After her appearance before the Magistrate Judge, Plaintiff was released on [$6,000] bond. Although she contested her charges, and purported to suffer from stress and anxiety, these events do not constitute a seizure for Fourth Amendment purposes.").

In this case, after Plaintiff appeared before the Magistrate, he was released on bond. (Depo. of Pl., Exh. 2, pp. 205-06, 210). Unlike the plaintiff in *Kingsland*, however, Plaintiff was not required to travel outside of the state of his residence to contest the charges. Furthermore, there is no evidence in the record that Plaintiff was prevented by the court from leaving the state.[9] As such, Plaintiff's claimed "seizure" is even less significant than that found by the Eleventh Circuit to be insufficient in *Kingsland*. Accordingly, Officer Adams is entitled to summary judgment on the malicious prosecution claim.

---

[9] Plaintiff alleges in his Complaint that he was restricted from leaving the state. (Doc. 5, ¶70). However, Plaintiff testified that he did not leave the state because he *thought* he could not leave the state. (Depo. of Pl., Exh. 2, pp. 210-15). The appearance bond documents only state that Plaintiff must notify the court prior to leaving the state. (Appearance Bonds, Exh. 7). Plaintiff admits that he never requested permission from the court to leave the state, and was never prevented by the court from leaving the state. (Depo. of Pl., Exh. 2, pp. 210-15).

{B0968804}

### C.   There is No Evidence of Malice.

Finally, there is absolutely no evidence in the record that the prosecution of Plaintiff was conducted with malice.  As explained above, in order to establish a federal malicious prosecution claim, Plaintiff must establish both a Fourth Amendment Seizure and the common law elements of malicious prosecution under Alabama law. *Kingsland*, 382 F.3d at 1234.  However, for purposes of a malicious prosecution claim under Alabama law, "legal malice [which can be inferred from a lack of probable cause] . . . is not sufficient to defeat a state agent's defense of discretionary function immunity." *Ex parte Tuscaloosa County*, 796 So. 2d 1100, 1107 (Ala. 2000).  Instead, in order to establish a claim of malicious prosecution sufficient to withstand summary judgment on a claim of immunity, Plaintiff is required to present substantial evidence of "actual malice;" that is, that Officer Adams arrested and prosecuted Plaintiff, and in doing so "had a personal ill will toward [Plaintiff] and that [he] maliciously or in bad faith caused [Plaintiff] to be arrested solely for the purpose of harassing him." *Id.*

There is no evidence that Officer Adams harbored any malicious intent toward Plaintiff.  Furthermore, as explained above, Officer Adams had arguable probable cause to charge Plaintiff with the offenses for which he was prosecuted. In addition to those already discussed, Officer Adams had arguable probable cause to charge Plaintiff with DUI based on Plaintiff's demeanor and actions which

{B0968804}

caused three trained law enforcement officers to all believe Plaintiff was under the influence of some drug. (Depo. of Adams, Exh. 1, pp. 30, 31; Depo. of Sivley, Exh. 3, pp. 99, 101; Aff. of Brasher, Exh. 4, ¶ 9). Furthermore, Plaintiff's refusal to tell Officer Adams or the nurses treating Plaintiff of any medications he was on or his medical history because he did not want it used against him in court serves to further support Officer Adams' arguable probable cause to believe that Plaintiff was under the influence of something. (Depo. of Pl., Exh. 2, p. 188; Depo. of Adams, Exh. 1, pp. 64-65).

The fact that Officer Adams had at least arguable probable cause to charge Plaintiff with the offenses precludes a malicious prosecution claim. *See, e.g., Horton v. Williams*, 572 F. Supp. 2d 1292, 1299 (M.D. Ala. 2008) (arguable probable cause defeats a claim of malicious prosecution); *Urbanique Production v. City of Montgomery*, 428 F. Supp. 2d 1193, 1218 (M.D. Ala. 2006) (same). Accordingly, Officer Adams is entitled to summary judgment on Count IV (State Law Malicious Prosecution) and Count V (Federal Law Malicious Prosecution).

## Conclusion

Based on the foregoing discussion, Officer Adams respectfully submits that there are no genuine issues of material fact and that he is therefore entitled to judgment as a matter of law in his favor for all claims asserted against him in Plaintiff's First Amended Complaint.

35

{B0968804}

Respectfully submitted,

/s/ H. Thomas Wells, III
H. THOMAS WELLS, III
ASB-4318-H62W
Email: HTW@starneslaw.com

J. BENTLEY OWENS, III
ASB-1986-O44J
Email: JBO@starneslaw.com

PHILIP G. PIGGOTT
ASB-4379-P67P
Email: PGP@starneslaw.com

Attorneys for the City of Trussville,
Don Sivley and Eric Adams

OF COUNSEL:
STARNES & ATCHISON LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, AL  35259-8512
Phone:       (205) 868-6000
Fax:           (205) 868-6099

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will electronically serve the following:

Adam M. Porter, Esquire
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Telephone:  (205) 322-8999
Email:          adamporter@earthlink.net

Respectfully submitted,

/s/ H. Thomas Wells, III
H. THOMAS WELLS, III

36

{B0968804}