UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHN WOODRUFF,          )
                                 )
          Plaintiff      )
                                 )
      v.                   )      Case No.  2:08-cv-00114-HGD
                                 )
CITY OF TRUSSVILLE, et al.,   )
                                 )
          Defendants  )

## <u>MEMORANDUM OPINION</u>

The above-entitled civil action is before the court on the Motion for Summary Judgment filed by defendant Eric Adams (Doc. #26) and the Motion for Summary Judgment filed by defendants City of Trussville and Don Sivley (Doc. #28).  This matter is before the undersigned United States Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

Plaintiff, John Woodruff, filed an amended complaint in which he alleges that he was subjected to an illegal arrest, excessive force in relation to that arrest, false imprisonment, and malicious prosecution.  He seeks relief under 42 U.S.C. § 1983 and various common law tort causes of action.  (Doc. #5, Amended Complaint). Defendants in this case, the City of Trussville, Trussville Police Officer Eric Adams, and Police Chief Don Sivley have filed the motions for summary judgment which are

addressed in this Memorandum Opinion.  (Doc. #26, Eric Adams' Motion for Summary Judgment; Doc. #28, City of Trussville and Don Sivley's Motion for Summary Judgment).  Defendants have filed evidentiary submissions and briefs in support of their motions, and plaintiff has filed evidentiary submissions and briefs in opposition to the motions, to which defendants have filed replies.  This matter is now ready for disposition with regard to these motions.[1]

## STANDARD OF REVIEW

This matter is considered by the court pursuant to the provisions of Rule 56, Fed. R. Civ. P.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  The

---

[1]  There are also two pending motions to strike certain evidentiary submissions which will be addressed herein.  (*See* Docs. #39 & 40, Defendants' Motions to Strike).

substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.   A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.  The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  *Id*. at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).  It is, therefore, under this standard that the court must determine

whether the plaintiff can meet his burden of coming forward with sufficient evidence as to each material element of his claim sufficient to permit a reasonable jury to find in his favor.

## AMENDED COMPLAINT

The Amended Complaint consists of nine counts.  Counts I, II, III, V, and VI allege violations of plaintiff's constitutional rights under 42 U.S.C. § 1983.  The remaining counts allege violations of state law.

In Count I, plaintiff alleges that a violation of 42 U.S.C. § 1983 occurred when he was arrested and detained by Sivley and Adams without probable cause, constituting an illegal seizure in violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.  He alleges that Sivley and Adams subjected plaintiff to the deprivation of these rights either maliciously or with reckless indifference for whether their actions would violate his constitutional rights.

In Count II, plaintiff alleges that the City of Trussville is liable for a violation of 42 U.S.C. § 1983 that occurred when plaintiff's constitutional rights were allegedly violated, as set out in Count I, because Sivley was the final policy-maker for the City of Trussville in relation to the events in this case.

In Count III, plaintiff again alleges a violation of 42 U.S.C. § 1983 as a result of Officer Adams pulling him from his vehicle and throwing him to the pavement

which, he claims, constituted excessive and unreasonable force in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

Count IV alleges that plaintiff was subjected to malicious prosecution by Sivley and Adams, in that they initiated criminal judicial proceedings against him though lacking in probable cause.  Plaintiff alleges that this was done maliciously, and that the proceeding terminated in his favor.

Count V alleges a violation of 42 U.S.C. § 1983 in that Sivley and Adams violated his Fourth Amendment right to be free from unreasonable seizure because he was incarcerated for 22 hours, had to pay a $3500 appearance bond and a $2268 appeal bond, had to make numerous court appearances and defend himself at two trials, and was restricted from leaving the state.  He alleges that the deprivation of these rights by Sivley and Adams was either malicious or done with reckless indifference to plaintiff's rights.

In Count VI, plaintiff alleges that the City of Trussville is liable under 42 U.S.C. § 1983 for malicious prosecution as stated in Count V because Sivley was the final policy-maker for Trussville in relation to the events in this case.

In Count VII, plaintiff alleges that Officer Adams is liable for assault and battery for punching him in the face with his fist, pulling him from his vehicle, throwing him onto the pavement and handcuffing him.

In Count VIII, plaintiff alleges that Sivley and Adams falsely imprisoned him without adequate cause.

In Count IX, plaintiff alleges that Adams, through negligence, carelessness or unskillfulness, punched plaintiff, pulled him from his vehicle, threw him to the ground and arrested him.  He further alleges that Sivley and Adams, through negligence or unskillfulness, prosecuted him without probable cause and while working for the City of Trussville.  He alleges that the City of Trussville is liable for Sivley and Adams' acts in their negligent prosecution of the plaintiff pursuant to *Ala. Code* § 11-47-190.

Defendants previously filed a motion to dismiss Counts VIII and IX. (Doc. #9).  The magistrate judge recommended that Count IX be dismissed in part, as to the "negligent prosecution" claim.  (Doc. #15).  No objections were filed by plaintiff, and United States District Judge Virginia Emerson Hopkins adopted the report and recommendation of the magistrate judge.  (Doc. #19).  Subsequent to the entry of adopting order, the parties consented to the jurisdiction of the United States Magistrate Judge.  (Doc. #43).

## FACTUAL BACKGROUND

The following rendition of facts is made with the understanding that the version of events set out by the court herein is taken in a light most favorable to the

non-moving party who is, in this instance, the plaintiff.  Therefore, wherever the court found factual conflicts, those facts were viewed from the plaintiff's point of view. Facts or occurrences presented by defendants but not addressed, and therefore not disputed by plaintiff, also may be considered by the court.

On the night of April 14, 2006, Don Sivley, Chief of Police for the City of Trussville, was driving on Interstate 459 North when he observed a vehicle driven by plaintiff, John Woodruff, driving in the same direction.  According to Chief Sivley, he first noticed plaintiff when he observed plaintiff's vehicle approaching him from behind at a high rate of speed.  (Sivley Depo. at 22).  Sivley testified that plaintiff drove up directly behind him and then switched lanes and came around him.  He observed plaintiff get very close to another vehicle (a pickup truck) before going around it.  (*Id.* at 24).  After going around him, Sivley states that plaintiff accelerated to approximately 80 miles per hour.  (*Id.* at 26).

Traveling at this speed, plaintiff caught up with another group of vehicles traveling in front of him.  (*Id.* at 27).  Chief Sivley states that plaintiff began flashing his headlights and moving back and forth between the lanes until he got around these vehicles.  (*Id.* at 28).  According to Chief Sivley, every time plaintiff reached a pack of cars, he would get close to other vehicles' bumpers.  (*Id.* at 35-36).  Plaintiff exited

onto Interstate 59 and then exited on Chalkville Mountain Road.[2]  Sivley stated that, after plaintiff passed him, until he exited onto Chalkville Road, the closest he got to plaintiff's vehicle was 100 to 150 yards.  (*Id.* at 35).

Plaintiff acknowledges that he was speeding while traveling on I-459. (Woodruff Depo. at 109).  He claims that, while driving on this road, an SUV pulled over in front of him causing him to slam on his brakes.  He states that he "probably" honked his horn.  He does not recall having made any "hand signals" but further states that he is "not saying it is not possible."  (*Id.* at 109-10).  He states that he later passed this vehicle.  (*Id.* at 112-13).

According to Woodruff, the SUV again pulled in front of him and slammed on his brakes.  Mr. Woodruff states that he attempted to go around this vehicle but that when he changed lanes, it would change lanes in front of him, blocking him from going around.  He states that, because his car had a little more "pep" than the SUV, he eventually was able to maneuver around it, whereupon he "punched the gas" and went on down the road.  (*Id.* at 115).  Plaintiff testified that he does not know who was driving the SUV.

After accelerating past the SUV, plaintiff testified that he used other vehicles as a "rolling road block" to stay away from it.  (*Id.* at 127).  Mr. Woodruff testified

---

[2]  This road is referred to in the various deposition transcripts as both Chalkville Road and Chalkville Mountain Road.  Both refer to the same road.

that he does not recall flashing his lights at other vehicles to get them to move out of the way, but he also does not deny that this could have occurred. (*Id.* at 129). He admits that his speed was such that he was catching up with vehicles in front of him. Plaintiff eventually exited onto Chalkville Mountain Road. (*Id.* at 136).

Although plaintiff denies driving recklessly, he does not dispute that Chief Sivley announced over the police radio that he had a suspect driving recklessly approaching the Chalkville Road exit of I-59 and asked whether any marked units were in the area.[3]

Officer Eric Adams responded to Chief Sivley's call and advised him that he was on North Chalkville Road. Chief Sivley instructed Adams to stop Woodruff for reckless driving. Officer Adams waited in the median of Chalkville Road, and when plaintiff passed him, he pulled in behind him and in front of Chief Sivley. Officer Adams followed plaintiff into the left-hand turn lane at the intersection of Chalkville Road and Trussville Crossings Parkway. He testified that he observed plaintiff make several abrupt lane changes without signaling and almost cut off another driver.

---

[3] Chief Sivley testified that, while behind the plaintiff on Chalkville Road, he observed him making abrupt and improper lane changes, once cutting a vehicle off. However, plaintiff disputes that he cut any vehicle off or made any other unsafe maneuver. Because the evidence is viewed in the light most favorable to the non-moving party, this factual dispute is viewed from plaintiff's point of view. However, there is no dispute that Sivley advised the dispatcher that he was following a vehicle that was being driven in a reckless manner.

(Adams Depo. at 21).  Plaintiff cannot recall, but he does not deny that he may have changed lanes without signaling.  (Woodruff Depo. at 138-39).

When the light turned green, plaintiff made a left turn onto Trussville Crossings Parkway.  Officer Adams turned on his emergency lights after they both had turned onto Trussville Crossings Parkway.  Plaintiff did not pull over immediately, but proceeded to turn onto another road in a shopping center where a movie theater was located.  Plaintiff acknowledges that he did not pull over when Officer Adams turned on his emergency lights. (Woodruff Depo. at 143).  When Mr. Woodruff did not pull over, Officer Adams activated his siren.  A vehicle in front of Mr. Woodruff pulled over to the side of the road and stopped.  Mr. Woodruff continued around the stopped vehicle in the direction of the movie theater.  At about this time, Jefferson County Sheriff's Deputy Loyed Brasher[4] was working as a security guard outside the theater.  He heard a police siren and observed plaintiff's vehicle approaching the theater with Officer Adams behind him.  According to Brasher, he stood in the roadway and flashed his flashlight at plaintiff in an attempt to get him to stop.  He testified that plaintiff did not stop and came very close to hitting him.  Although disputed by Deputy Brasher, plaintiff denies that he continued on at an unsafe speed or in a reckless manner.

---

[4]  At the Circuit Court trial of plaintiff's criminal charges, Deputy Brasher was referred to as Deputy McGowen.  It is presumed that they are one and the same.

Plaintiff states that he was aware that Officer Adams was behind him with his emergency lights on and that Officer Adams activated his siren. Woodruff states that he did not pull over because there was nowhere to do so, despite the fact that a vehicle in front of him was able to pull over. He claims that he intended to stop near the front of the theater where the area was well lit and he would not block traffic. (Woodruff Depo. at 147-51). Although disputed by Officer Adams and Deputy Brasher, Mr. Woodruff also denies that there were any people in the roadway as he approached the theater. However, Woodruff acknowledges that he heard a siren although he states that he cannot say that it came from Officer Adams' vehicle. (Woodruff Depo. at 152). However, he later contradicted himself when he stated he may not have heard the officer telling him to get out of his vehicle "given the noise . . . of people congregating in front of the theater." (*Id.* at 166).

According to Mr. Woodruff, he observed the deputy standing on the curb between the theater and the parking lot and that he stepped off the curb in front of Woodruff's vehicle. However, plaintiff asserts that he did not see Deputy Brasher flashing a flashlight at him or yelling for him to stop. According to plaintiff, Brasher was not in a deputy sheriff uniform but, rather, was dressed in all black clothing. He did not see any badge or other insignia on his clothing. Woodruff states that he had no indication that Brasher was a law enforcement officer. (*Id*. at 154).

Woodruff testified that he did not approach the deputy at a high rate of speed or veer around him, causing the deputy to have to jump out of the way, as asserted by the law enforcement officers. He states that he merely drove around him and did not come close to hitting him. He then stopped at the theater and began talking out of the passenger-side window to Cheryl Wilkins, a person he was meeting to accompany to a movie. (*Id*. at 155-58).

At this time, Officer Adams states he pulled his cruiser around and in front of plaintiff's vehicle. Both Officer Adams and Deputy Brasher approached plaintiff's vehicle. The officers claim that Mr. Woodruff was ordered to get out of the vehicle and that he responded with a question to the effect of asking the officers what was going on, whereupon Officer Adams reached in the vehicle, unfastened plaintiff's seatbelt and, with the help of Deputy Brasher, forcibly removed him from the vehicle. Officer Adams testified in his deposition that, while reaching in to unfasten plaintiff's seatbelt, part of his body "probably" came into contact with the plaintiff's body but that he had no recollection of this happening. (Adams Depo. at 218). At plaintiff's trial in Jefferson County Circuit Court, he testified that his hand may have "brushed up" against plaintiff's face as he was undoing his seatbelt. However, he denied ever having actually struck plaintiff in the face. (Doc. #33, Ex. E, Circuit Court Transcript, at 97-99). According to the officers, Mr. Woodruff resisted and yelled obscenities, requiring them to force him to the ground to be handcuffed.

Plaintiff, on the other hand, states that he did not hear anyone telling him to get out of his vehicle.  However, he admits that they "may well have said something, given the noise of, you know, people congregating in front of the theater.  .  .  . Perhaps they didn't say it loud enough.  I don't remember hearing them say anything." (Woodruff Depo. at 166).  He testified that he pulled over in front of the theater to talk to a friend, Cheryl Wilkins, who was meeting Woodruff at the theater. According to Woodruff, he pulled out his wallet to give Wilkins a credit card to buy the tickets while he tried to "figure out what is going on here." (*Id*. at 164).  Plaintiff states that when Officer Adams approached his vehicle, he was looking out the right passenger window talking to Wilkins.   Without any warning, Adams opened Woodruff's driver-side door and struck him in the head.  When asked if he knew what he was struck with, he testified that "I would say it was a hand, arm, forearm, elbow, you know." (*Id*. at 167).

When asked whether it was like a "full-on punch or your face just got hit by something?", he responded:

> . . . I was looking to my right.  And you know, there is a difference between being hit to the side of the face and being punched square in the nose or mouth.  You know, it could well be that I was turned enough, so it was a glancing blow.  I can't speculate as to what Adam's intent was.  It was hostile contact for sure.  I mean if -- if somebody pulled that with me on the street, I would take it as a -- as a provocation to a fight.

(*Id.* at 167-68).  He states he then was forcefully pulled out of the vehicle and thrown to the ground, striking his head on the pavement.  He states that he said something to the effect of "what the f___ is going on or what the hell is going on or what's your f___ing problem" at the time he was hit.  (*Id.* at 169-70).  He was handcuffed and then placed in Officer Adams' patrol car.  Plaintiff denies that he refused any order by the officer or that he yelled at him.  He also disputes that he was under the influence of any drugs at the time of the offense.

Mr. Woodruff claims that he suffered abrasions to his face, shoulder, and thumb.  However, he also states that he did not seek medical treatment for any of these injuries.  Trussville paramedics who examined Woodruff at the jail noted that he had "no obvious signs of physical injury" and "no sign of abrasions" on his head or chest.  (Doc. #27, Ex. 6, Paramedic Report).

Officer Adams charged plaintiff with failure to yield to an emergency vehicle, failure to obey a lawful order, disorderly conduct, resisting arrest, and driving under the influence.  He was released on bond after 22 hours in custody.  According to Chief Sivley, Mr. Woodruff was jailed as a result of the driving-under-the-influence charge.  (Sivley Depo. at 97).

Although he was allegedly uncooperative with the officers, Chief Sivley concedes that plaintiff did not exhibit certain signs of intoxication in that he was not slurring his words or slobbering and did not smell of alcohol.  According to Sivley,

he believed Woodruff was intoxicated based on his "general mannerisms," including his screaming and yelling and resisting arrest.  (*Id.* at 99-101).  During a search of his vehicle, several  Ritalin pills[5] were recovered.  (Adams Depo. at 232-33).  However, subsequent toxicological tests failed to reflect any drugs or alcohol in plaintiff's blood.  Adams and the city prosecutor decided to dismiss the DUI charge.  However, Mr. Woodruff was convicted in municipal court of reckless driving, disorderly conduct, and resisting arrest.  He was acquitted of the charges of refusal to obey a lawful order and failure to yield right of way.  Plaintiff then appealed his convictions and was acquitted after a trial by jury in Jefferson County Circuit Court.

**DISCUSSION**

**A.  Federal Law Claims**

<u>**Count I**</u>

In Count I, plaintiff alleges that a violation of 42 U.S.C. § 1983 occurred when he was arrested and detained by Sivley and Adams without probable cause, constituting an illegal seizure in violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.  Adams and Sivley assert that they

---

[5]  Ritalin is one of several trade names for methylphenidate hydrochloride, a mild central nervous system stimulant used in the treatment of attention-deficit/hyperactivity disorder (ADHD) in children.  It is also used in adults to treat narcolepsy.  *Physicians' Desk Reference* 2078 (53rd ed. 1999).

are not liable by virtue of qualified immunity.   Qualified immunity shields government actors from liability in all but exceptional cases.  *Lassiter v. Alabama A&M Univ.*, 28 F.3d 1146 (11th Cir. 1994).  An official, in his individual capacity, is entitled to qualified immunity if he is performing discretionary functions and his actions do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Riley v. Camp*, 130 F.3d 958, 968 (11th Cir. 1997) (*en banc*) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

In order to show that a right is clearly established, a plaintiff must "show that there existed sufficient case law establishing the contours of his or her constitutional rights such that the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same circumstances. . . .  If no such case law exists, then the defendant is entitled to qualified immunity." *Nicholson v. Georgia Dep't of Human Resources*, 918 F.2d 145, 147 (11th Cir. 1990).

The Fourth Amendment, made applicable to the States by virtue of its incorporation into the Fourteenth Amendment, see *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979); *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (plurality opinion), provides in pertinent part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

U.S. Const. amend. IV.  It is well established that a § 1983 claim may lie for a Fourth Amendment violation where a plaintiff is arrested and detained incident thereto where such a "seizure" is "unreasonable" in that it is neither pursuant to a warrant nor supported by probable cause. *See Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996); *Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990); *Reeves v. City of Jackson*, 608 F.2d 644, 650 (5th Cir. 1979).  In order to prevail on a § 1983 claim alleging that his warrantless arrest was unconstitutional, plaintiff has the burden at trial to prove the absence of probable cause. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998).

Adams and Sivley claim that they had probable cause to arrest Mr. Woodruff, entitling them to qualified immunity and, hence, summary judgment on this claim. *See Marx v. Gumbinner*, 905 F.2d at 1505-06 ("The existence of probable cause . . . is an absolute bar to a section 1983 action for false arrest").  In order for probable cause to exist, "an arrest [must] be objectively reasonable under the totality of the circumstances," *Bailey v. Board of County Comm'rs of Alachua County, Fla.*, 956 F.2d 1112, 1119 (11th Cir. 1992), and an officer's subjective intentions and beliefs play no role in determining the existence of probable cause. *See Rankin v. Evans*, 133 F.3d 1425, 1433-34 (11th Cir. 1998).  A "law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge . . . would cause a prudent person to believe, under the circumstances shown, that the

suspect has committed, is committing, or is about to commit an offense." *Id.* at 1120 (quoting *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990)).

Qualified immunity generally shields government officials from individual liability under § 1983, provided that "their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter*, 28 F.3d at 1149 (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738). "Because qualified immunity is the 'usual rule' for government actors sued in their individual capacities, it will shield them unless case law establishes a bright line in 'a concrete and factually defined context' that makes a violation of federal law obvious." *Scarbrough v. Myles*, 245 F.3d 1299, 1301 (11th Cir. 2001) (quoting *Lassiter*, 28 F.3d at 1149).

In the context of a claim of wrongful arrest, even if an officer lacks "actual" probable cause, he will still be protected by qualified immunity if there is at least "arguable" probable cause, *i.e.*, if a reasonable police offer, given his knowledge of the facts and circumstances, could have believed there was probable cause to make a warrantless arrest. *See Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" *Id*. (quoting *Scarbrough v. Myles*, 245 F.3d at 1302).

When deciding the issue of qualified immunity on summary judgment, this court is required to resolve all issues of material fact in favor of the plaintiff and then answer the legal question of whether an official is entitled to qualified immunity under that version of the facts. *Redd v. City of Enterprise*, 140 F.3d 1378, 1380 (11th Cir. 1998).

Plaintiff acknowledges that he was speeding on the interstate on the night of his arrest. The uncontradicted testimony of Chief Sivley is that Woodruff accelerated up to 80 miles per hour. Plaintiff also admits that he was moving at a rate of speed such that he was catching up with cars that were in front of him on the interstate. Although he claims he was trying to get around an SUV that was harassing him, Woodruff also acknowledges that he was moving from lane to lane and does not specifically contradict Chief Sivley's testimony that he was flashing his lights at vehicles in front of him as he traveled down the interstate highway. There is no testimony to reflect that Chief Sivley was aware that another vehicle was harassing plaintiff, causing him to take some of the actions he took at that time.

The Alabama statute on reckless driving states, in pertinent part:

> (a) Any person who drives any vehicle carelessly and heedlessly in willful or wanton disregard for the rights or safety of persons or property, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving.

*Ala. Code* § 32-5A-190.

Viewing the evidence in the light most favorable to plaintiff, Chief Sivley had at least "arguable probable cause" that plaintiff was driving recklessly, in violation of Alabama law.  The existence of arguable probable cause shields both Sivley and Adams from liability for false arrest and false imprisonment by virtue of qualified immunity.  *See Wood v. Kessler*, 323 F.3d 872, 878-79 (11th Cir. 2003).

## Count II

In Count II, plaintiff seeks to hold the City of Trussville liable for the actions of Adams and Sivley in stopping and arresting him.  Because Adams and Sivley are shielded from liability based on qualified immunity as outlined above, the City of Trussville is entitled to the same immunity.

In addition, a municipality may not be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior.  Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997).  "Instead, municipalities may only be held liable for the execution of a governmental policy or custom."  *Scala*, *supra.  See Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38.  Stated differently, a municipality may be held liable under § 1983 only if "'action pursuant to official municipal policy of some nature caused a constitutional tort.'"  *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 709, 109 S.Ct. 2702, 2709, 105 L.Ed.2d 598 (1989) (quoting *Monell*, 436 U.S. at 691, 98

S.Ct. at 2036).   As the *Monell* court explained, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  436 U.S. at 694, 98 S.Ct. at 2037-38.  *Accord Morro v. City of Birmingham*, 117 F.3d 508 (11th Cir. 1997).

"[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.  . . .  A custom is a practice that is so settled and permanent that it takes on the force of law."  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 852, 139 L.Ed.2d 753 (1998).  The Eleventh Circuit has emphasized that:

> "[t]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice.  Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality."  *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994).

*Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999).

Plaintiff has offered no evidence that the City of Trussville has a custom or practice of arresting defendants without probable cause.  Simply because the Chief of Police was present and involved in the events that occurred does not make these actions the official policy of the City.   In this case, the City of Trussville has established that its written policy requires that officers ensure that an individual's constitutional guarantees are protected and that an arrest with or without a warrant "must be accompanied within the limits of authority as set forth by the Constitution, State Law and applicable court decisions."  (Doc. #29, Ex. 11, Selected Policies of the Trussville Police Department, at 0040-42).

Although the U.S. Supreme Court has held that there are occasions when a municipality may be liable for a single decision by a municipal policy maker under appropriate circumstances, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298-99, 89 L.Ed.2d 452 (1986), such is not the case here.  In *Pembaur*, a County prosecutor authorized police officers to break down a door to serve grand jury capias on witnesses who were believed to be inside.  There was no state law or municipal policy that prohibited such action.  The authority to make such decisions was vested in the County prosecutor.  Under these circumstances, the Supreme Court held that a single decision can be the basis of a "policy" sufficient to impose liability under *Monell*.  *Pembaur*, 475 U.S. at 484-85, 106 S.Ct. at 1300-01.  However, Justice White noted that the fact that a particular official has discretion in the exercise of

particular functions does not give rise to municipal liability based on an exercise of that discretion unless the official is also responsible, under state law, for establishing final governmental policy respecting such activity.  *Id.* at 486, 106 S.Ct. at 1306 (White, J., concurring).  He stated:

> This does not mean that every act of municipal officials with final authority to effect or authorize arrests and searches represents the policy of the municipality. . . . A sheriff, for example, is not the final policymaker with respect to the probable cause requirement for a valid arrest. He has no alternative but to act in accordance with the established standard; and his deliberate or mistaken departure from the controlling law of arrest would not represent municipal policy.

*Id*.

Without more, it cannot be said that Chief Sivley's presence or activity regarding plaintiff's arrest gives rise to municipal liability.  Even assuming he ordered Officer Adams to arrest plaintiff without probable cause, Chief Sivley's actions would have been contrary to the public policy of the City of Trussville.  There is no evidence of any pattern or practice of Trussville officers making arrests without probable cause.  Therefore, there is no basis for liability for the City under Count II.

## Count III

In Count III, plaintiff again alleges a violation of 42 U.S.C. § 1983 as a result of Officer Adams pulling him from his vehicle and throwing him to the pavement which, he claims, constituted excessive and unreasonable force in violation of the

Fourth and Fourteenth Amendments to the United States Constitution.  The law governing claims of excessive force during arrest is found in *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).[6]  The Supreme Court held that where an excessive force claim arises in the context of an arrest of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment and that the proper analysis is one of "objective reasonableness."  The focus of the inquiry is "a careful balancing of the 'nature and quality of the intrusion on the individual's Fourth Amendment interest' against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871, quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985).

The test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to

---

[6]  *Graham v. Connor* primarily stands for the proposition that a § 1983 claim based on excessive force in the context of an "arrest or investigatory stop of a free citizen" arises from the Fourth Amendment.  490 U.S. at 394, 109 S.Ct. at 1871.  After the court announced that the right stems from the Fourth Amendment, not the Due Process Clause or the Eighth Amendment, the court held that the subjective intent of an officer does not affect the existence of a Fourth Amendment violation. *See id.* at 397, 109 S.Ct. at 1872-73 (explaining that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional").

evade arrest by flight." *Graham, supra*.  The totality of the circumstances must be considered, and "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

The Supreme Court reminded that "not every push or shove, even though it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.*  The question is "whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to the underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872.  The law recognizes that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396, 109 S.Ct. at 1872, citing *Terry v. Ohio*, 392 U.S. 1, 22-27, 88 S.Ct. 1868, 1880-83,  20 L.Ed.2d 889 (1968).  The question is whether the officer's actions were "objectively reasonable" under the totality of circumstances without regard to the underlying intent.  *Id*.; *Ortega v. Schramm*, 922 F.2d 684, 695 (11th Cir. 1991).

Officer Adams contends he used an amount of force insufficient as a matter of law to support an excessive force claim even under plaintiff's version of the events.  The Eleventh Circuit routinely applied the principle of *de minimis* force before the Supreme Court's decision in *Graham v. Connor*.  *See Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986)*; Byrd v. Clark*, 783 F.2d 1002, 1006 (11th Cir. 1986);

*Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500-01 (11th Cir. 1985) (*en banc*).  At least four cases from the Eleventh Circuit have used the principle of *de minimis* force since *Graham* in reversing a district court's denial of qualified immunity to police officers.  *See Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000); *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir. 1997); *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997); *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993).  In the earliest of the post-*Graham* cases, *Post*, the officer, who sought to arrest the plaintiff for a building code violation, pushed the plaintiff against a wall and applied a choke-hold before placing the plaintiff in handcuffs, all despite the fact that the plaintiff did not resist.  The Eleventh Circuit concluded that once the plaintiff was handcuffed and taken outside, no further force was needed.  However, even though pushing the plaintiff against the wall might have been unnecessary, the pushing was not plainly unlawful.  When the officer acted, the case law on excessive force considered, among other things, the need for force, the amount of force used and the injury inflicted.  That the amount of force the officer used, even if unnecessary, was enough to violate the law was not plain; reasonable doubt existed, and still exists, on whether this amount of unnecessary force was unlawful.  *Post*, 7 F.3d at 1559-60 (quotations and citations omitted).

In *Gold*, the defendant officer arrested the plaintiff for disorderly conduct, which consisted mainly of disrespectful comments to the officer, and placed him in

handcuffs.  The plaintiff complained that the officer had applied the handcuffs too tightly and had refused to loosen them for more than 20 minutes.  In granting qualified immunity to the officer, the Eleventh Circuit stated that the facts viewed in the light most favorable to the plaintiff showed that the plaintiff experienced pain from the handcuffs for roughly 20 minutes and that the plaintiff suffered only skin abrasions for which he did not seek medical treatment.  The minor nature of the injury reflected that minimal force was used to apply the handcuffs.  It was stated that these circumstances would not "inevitably lead" a reasonable officer in the officers' positions to conclude that the force used to apply the handcuffs was unlawful.  *Gold*, 121 F.3d at 1446-47.

In *Jones*, the officer "slammed" the plaintiff against a wall, "kicked his legs apart, required him to raise his arms above his head, and pulled his wallet from his pants." *Jones*, 121 F.3d at 1460.  This led the plaintiff to experience "pain from having to lift his arms since he had previously suffered a stroke" and "pain in his arthritic knee from having his legs kicked apart." *Id.*  In addition, the plaintiff later received minor medical treatment for the pain in his knee.  Nevertheless, the *Jones* court determined, relying on *Post*, that qualified immunity shielded the officers because while "the use of force against [the plaintiff] may have been unnecessary, the actual force used and the injury inflicted were both minor in nature.  Given such variables, the application of the excessive force standard would not inevitably lead

an official in [the defendant officers'] position to conclude that the force was unlawful." *Id.* at 1460-61.

Finally, in *Nolin*, an officer mistakenly thought the plaintiff was fighting another man when, in fact, the two were friends who were simply engaged in horseplay.  The plaintiff alleged that the officer grabbed him from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into side of van, searched his groin area in an uncomfortable manner, and handcuffed him.  The plaintiff claimed he suffered bruising to his forehead, chest, and wrists, though he admitted the bruises disappeared quickly and he did not seek medical treatment.  *Nolin*, 207 F.3d at 1254.  The Eleventh Circuit held that the minimal amount of damage that occurred would not support an excessive force claim under the Fourth Amendment.  *Id.* at 1258.

In the case before the court, Officer Adams had been advised that plaintiff had been driving recklessly.  Regardless of the reason, plaintiff failed to pull over when Officer Adams turned on his emergency lights and, later, when he sounded his siren.  Under the circumstances, even as put forth by plaintiff, his injuries were *de minimis* and the actions taken by Officer Adams do not amount to constitutionally excessive force under the Fourth Amendment.  Therefore, Officer Adams is entitled to qualified immunity for this claim as well.

## Count V

In Count V, plaintiff alleges that Sivley and Adams violated his Fourth Amendment right to be free from unreasonable seizure because he was incarcerated for 22 hours, had to pay a $3500 appearance bond and a $2268 appeal bond, had to make numerous court appearances and defend himself at two trials, and was restricted from leaving the state. He alleges that the deprivation of these rights by Sivley and Adams was either malicious or done with reckless indifference to plaintiff's rights and amounted to a violation of 42 U.S.C. § 1983.

It is unrefuted that officers found three Ritalin tablets inside plaintiff's vehicle when it was searched after his arrest. Ritalin is a Schedule III controlled substance under Alabama law, making its possession without a prescription illegal. *See Ala. Code* § 20-2-27(a)(1)(d). In addition, as noted above, Officer Adams and Chief Sivley had at least arguable probable cause that plaintiff had committed the offense of reckless driving. Thus, his arrest and incarceration were not inappropriate. Plaintiff has not demonstrated that defendants took any steps to keep him in jail or to prevent him from making bond after his arrest. Consequently, Officer Adams and Chief Sivley are shielded from liability for this claim based on qualified immunity.

## Count VI

In Count VI, plaintiff alleges that the City of Trussville is liable under 42 U.S.C. § 1983 for malicious prosecution as stated in Count V because Sivley was

the final policy-maker for Trussville in relation to the events in this case.  In order to prove malicious prosecution under § 1983, a plaintiff must establish "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures."  *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).  For the same reasons as those cited with regard to Count II, the City of Trussville is not liable for this claim.  There existed probable cause to arrest plaintiff.  Consequently, there was no Fourth Amendment violation.  In any event, there has been no evidence submitted that reflects a policy by the City of Trussville to violate plaintiff's constitutional rights.  *See Monell, supra.*

## B.  State Law Claims

## Count IV

_____In Count IV, plaintiff alleges that he was subjected to malicious prosecution by Sivley and Adams in that they initiated criminal judicial proceedings against him though lacking in probable cause.  Plaintiff alleges that this was done maliciously and that the proceeding terminated in his favor.

Adams and Sivley assert that, pursuant to the discretionary function immunity provided by *Ala. Code* § 6-5-338,[7] they are entitled to prevail on Woodruff's state law

---

[7] Section 6-5-338 provides in pertinent part:

claims alleging false arrest, excessive force, malicious prosecution, assault and battery, false imprisonment, and negligence.  In 1994, the Alabama legislature granted statutory immunity from tort liability to municipal police officers for "conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." *Ala. Code* § 6-5-338(a).  Such immunity "shields [an] employee from liability if the employee is engaged in a discretionary act, instead of a ministerial one, when the alleged tortious conduct occurs." *McDonough v. Parker*, 781 So.2d 936, 938 (Ala. 2000) (*quoting Ex parte Alabama Dep't of Forensic Sciences*, 709 So.2d 455, 458 (Ala. 1997)).  "Discretionary acts have been defined as those acts as to which there is no hard and fast rule as to the course of conduct that

---

(a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996).

"'Ministerial acts,' on the other hand, are those acts 'done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how, or under what circumstances their acts are to be done.'" *McDonough, supra* (*quoting Carroll v. Hammett*, 744 So.2d 906, 910 (Ala. 1999)). Actions by an officer in executing an arrest are generally considered discretionary functions for purposes of § 6-5-338. *See Wright*, 682 So.2d at 2; *Ex parte City of Montgomery*, 758 So.2d 565, 569-71 (Ala. 1999); *Sheth v. Webster*, 145 F.3d 1231, 1238-39 (11th Cir. 1998).

However, exempted from the coverage of the immunity provided by § 6-5-338 is conduct by a police officer that is "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Couch v. City of Sheffield*, 708 So.2d 144, 153 (Ala. 1998). Thus, in the absence of sufficient proof indicating that an officer acted with malice or in bad faith in making or carrying out an arrest, the immunity of § 6-5-338 shields him from tort liability. *See Wright, supra; Ex parte City of Montgomery*, *supra*; *Sheth*, *supra*.

Officer Adams' and Chief Sivley's actions were clearly discretionary. Therefore, discretionary function immunity shields them from tort liability except to

the extent that their arrest of Woodruff could reasonably be said to have been willful or malicious conduct or conduct in which they engaged in bad faith. *See Wright, supra.* It is unrefuted that Chief Sivley observed plaintiff speeding on the interstate highway, changing lanes without signaling and flashing his lights as he approached slower moving vehicles from behind. It is also undisputed that Sivley advised Adams that plaintiff had been driving recklessly and, when Adams attempted to pull him over with both lights and siren, plaintiff failed to stop immediately. Under the circumstances of the arrest presented here, no jury could reasonably believe that Adams' and Sivley's arrest of Woodruff was malicious or in bad faith.

Furthermore, the decision to prosecute plaintiff is one which is made by the County prosecutor, not Officer Adams or Chief Sivley. Although the decision to prosecute may have been taken after consultation with them, this does not mean they had the authority to initiate the prosecution. *See Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir. 1994). In this case, after filing the charges against plaintiff, a hearing was held by the city magistrate who set bond for plaintiff pending trial. Aside from testifying at his trials, the remainder of the prosecution was handled by the County prosecutor, except for the fact that Adams consulted with and recommended to the County prosecutor that the DUI charge be dropped when the laboratory analysis of plaintiff's blood failed to show any controlled substance or alcohol. (*See* Doc. #27, Ex. 9, Aff. of Burgin Kent; Woodruff Depo. at 225).

On this evidence, summary judgment on the basis of discretionary function immunity is due to be granted in favor of Officer Adams and Chief Sivley.

## Count VII

In Count VII, plaintiff alleges that Officer Adams is liable for assault and battery for punching him in the face with his fist, pulling him from his vehicle, throwing him onto the pavement and handcuffing him.  As noted above, any injury to plaintiff that occurred during his arrest was *de minimis*.  Plaintiff claims he was hit in the back of the head, but suffered no observable injury.  Plaintiff did not see Officer Adams strike him because plaintiff's head was turned away from Adams when this occurred.  Mr. Woodruff does not know if he was hit with a hand, a fist, an arm, or an elbow.  On the other hand, Officer Adams testified that, if he struck plaintiff, it was incidental to removing him from the motor vehicle after plaintiff refused an order to get out.

Plaintiff testified that he did not hear the officers tell him to exit the vehicle but concedes that they might have done so and that he simply did not hear it.  Officer Adams testified that he, in fact, told plaintiff to get out of the vehicle and plaintiff failed to do so.  Officer Adams could not have known that Mr. Woodruff did not hear him.  Thus, it was not unreasonable for him to believe that plaintiff was intentionally refusing to exit the vehicle, in the same manner that he had failed to stop for the officer's emergency lights and siren.

An officer is allowed to use reasonable force to effect an arrest.  Based on the facts viewed in the light most favorable to plaintiff, there is no evidence that Officer Adams acted maliciously or with bad faith as to plaintiff's rights.  Therefore, Officer Adams is entitled to state-agent immunity pursuant to *Ala. Code* § 6-5-338(a).

## Count VIII

In Count VIII, plaintiff alleges that Sivley and Adams falsely imprisoned him without adequate cause.  Even when viewed in the light most favorable to the plaintiff, based on the drugs found in plaintiff's vehicle and his actions on the interstate highway and during the attempt by Officer Adams to get him to pull over, there is no evidence that Officer Adams or Chief Sivley acted with malice or in bad faith.  Therefore, they are entitled to state-agent immunity for this count, as well.

## Count IX

In Count IX, plaintiff alleges that Adams, through negligence, carelessness or unskillfulness punched plaintiff, pulled him from his vehicle, threw him to the ground and arrested him.  Adams contends that he is entitled to state-agent immunity with respect to this negligence claim.  As discussed *supra*, the actions taken by Officer Adams in effectuating plaintiff's arrest were discretionary.  Therefore, the discretionary function immunity provided in *Ala. Code* § 6-5-338 shields him from liability for any claim of negligence in seizing and arresting plaintiff, and defendant Adams is entitled to summary judgment in his favor on this count.

### C.  Motions to Strike

Defendants' motion to strike plaintiff's declaration (Doc. #39) is due to be DENIED.  The alleged contradictory statements are either ambiguous or not material. Defendants' motion to strike certain portions of plaintiff's brief and plaintiff's Exhibits 6 and 8 (Doc. #40) also is due to be DENIED.   While certainly of questionable relevance, the argument offered in the brief and the evidence offered in the two exhibits had no effect on the court's decision in this case.

### CONCLUSION

Based on the foregoing analysis, the court concludes that defendants' motions for summary judgment are due to be GRANTED as to each remaining count and each defendant.  A separate order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 8th day of February, 2010.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE